UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KOLLIN BEHRGHUNDI,<br>*Plaintiff* | § § § § | |
| v. | § § | Case No. 1:19-CV-402-LY |
| SAVE OUR CITY—MART, TEXAS,<br>*Defendant* | § § § § § § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court is a Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. No. 11) and Plaintiff's Response (Dkt. No. 12). The District Court referred the above motions to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I. BACKGROUND

Plaintiff Kollin Berhghundi ("Plaintiff") is a local business owner in Mart, Texas, who lost his bid for election to the Mart City Council ("City Council") in May 2019. On April 10, 2019, Plaintiff filed this action against an organization called "Save Our City—Mart, Texas" ("Save Our City" or "SOC"). Dkt. No. 1. Plaintiff alleges the following facts: Save Our City is an informal local organization whose membership "largely or entirely overlap[s]" with City Council and city officials and staff. Am. Compl., Dkt. No. 10 ¶ 24. Its "primary purpose" is to elect SOC members and preserve their incumbency. *Id.* at 1. Members include Chief City Planner Henry Witt III

("Witt"), City official Kevin Schaffer ("Schaffer"), Public Works Director Steven Smith ("Smith"), and Mayor Leonard Williams ("Williams"). *Id.* ¶¶ 24-26.

Plaintiff alleges that SOC uses its Facebook page both to promote candidates for election and to act on behalf of the City Council, including announcing City policies on behalf of the City, promoting City initiatives, and issuing statements for the City. *Id.* ¶¶ 13, 28-32, 34. Plaintiff alleges that "Save [O]ur City for all intents and purposes is the City of Mart communications office." *Id.* ¶ 36. For example, on March 12, 2019, the SOC Facebook page posted an announcement detailing the City's application for grant funding for the City's wastewater treatment plant.[1] *Id.* ¶ 29. At the same time, SOC promotes candidates for election. For example, on March 6, 2013, Williams, who was then a candidate for Mayor, welcomed a candidate named Kent Haney "to the 'Save Our City' slate of candidates" in a post to the SOC Facebook page. *Id.* ¶ 27. Williams also stated that Haney "has pledged to be a supporting member" and identified Schaffer as a "very important member of the Save [O]ur City campaign." *Id.* In full-page newspaper ads and social media posts, Save Our City ran "both self-identified and veiled political advertisements in favor of John Garrett and Tommy Roberson, both of whom defeated Plaintiff for City Council seats." *Id.* ¶ 65. Plaintiff alleges that SOC has accomplished "some good things" but effectively serves as a "shadow city government" that works to exclude new representatives and undermine government transparency. *Id.* at 1.

Plaintiff alleges that SOC, its members, and City officials have acted in concert to retaliate against him for engaging in three types of speech protected by the First Amendment: running for

---

[1] The full text of the post reads: "ATTENTION MART CITIZENS: The City of Mart has applied for $9.25 million in grant funding from the Texas Water Development Board for upgrades to the city's wastewater (sewer) treatment plant. City officials have been in close contact with State Representative Kyle Kacal, who is in full support of this funding effort. The application process and upgrade project are being spearheaded by Mart City Council Member, Haley Pankonien, while Henry Witt III assists in an advisory capacity." *Id.* ¶ 29.

office, publicizing environmental violations by the City,[2] and recording and sharing a video of Mayor Len Williams ("Williams") berating customers and "creating a scene" at Plaintiff's business, Firewater Liquor Store. *Id.* ¶¶ 23, 27, 32-38. They have retaliated by "publicly and falsely suggesting that Plaintiff is married to a felon"; discouraging customers from patronizing Plaintiff's business; vandalizing Plaintiff's business;[3] delaying city projects that affect Plaintiff's business; and providing false information to Plaintiff about the City Council election to undermine his candidacy. *Id.* ¶¶ 35, 39-41. Plaintiff alleges that SOC members also have discouraged others from running for office by providing inaccurate information to potential candidates. *Id.* ¶¶ 37-39.

Plaintiff alleges two forms of injury: first, that he lost the May 2019 City Council election "after having to compete against what appears to have been improper coordination between SOC-member elected officials and city staff in sabotaging his candidacy"; and second, that he has suffered losses to his business, including loss of business opportunities, loss of customers and goodwill, and vandalism "apparently at the hands of Mart Public Works Director Steven Smith" and with the cooperation or knowledge of City Council and SOC member John Garrett. Dkt. No. 10 ¶ 15. Based on these allegations, Plaintiff asserts a claim for First Amendment retaliation under 42 U.S.C § 1983 ("Section 1983") and a claim for violation of Texas Election Code § 253.131. *Id.* ¶¶ 46-61; 62-70.

---

[2] Plaintiff alleges that he helped to publicize a leaked report from the Texas Council on Environmental Quality ("TCEQ"), which found that the City deliberately dumped sewer sludge into a local stream, misled TCEQ investigators, and committed other environmental violations. *Id.* ¶¶ 33-34, 49.

[3] Plaintiff alleges that after he publicized his recording of Mayor Williams "creating a scene" at Firewater, the shop was "vandalized with graffiti, broken windows, and water-meter tampering." *Id.* ¶¶ 40, 51.3. Plaintiff alleges that Public Works Director Steven Smith carried out the vandalism "with the cooperation or at least the knowledge of" John Garrett, a City councilmember and alleged member of SOC. *Id.* ¶¶ 15.2.3. According to Mart Police Department records that Plaintiff received in response to a Freedom of Information Act request, Smith admitted to being on the premises of Firewater at the time of the vandalism. *Id.* ¶ 40.1 n.7. The police "made a referral to other law enforcement for 'engaging in organized election fraud activity.'" *Id.*

Plaintiff served his original complaint on Mayor Williams, an alleged member of SOC. *Id.* ¶ 22. Williams answered on behalf of SOC and filed a motion to dismiss.[4] Dkt No. 2. Plaintiff then filed his First Amended Complaint, deleting an equal protection claim and adding the Texas Election Code claim. Dkt. No. 10.

Williams now moves for a second time to dismiss Plaintiffs' claims under Rule 12(b)(1) and Rule 12(b)(6). Dkt. No. 11. Williams asserts that: (1) Save Our City is a Facebook page, not an entity with legal capacity to be sued; (2) Plaintiff has failed to state a First Amendment claim under Section 1983 because (a) SOC is a Facebook page that cannot plausibly act under "color of law" as a state actor and (b) Plaintiff lacks standing to assert a Section 1983 claim because he has not alleged an actual injury; and (3) Plaintiff has failed to state a claim under the Texas Election Code because he has pled insufficient facts to support his claim that SOC is a "political committee" regulated by the statute.

## II. LEGAL STANDARDS

Williams moves to dismiss Plaintiff's claims under Rule 12(b)(1) and Rule 12(b)(6).

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. FED. R. CIV. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). In ruling on a Rule 12(b)(1) motion, the court

---

[4] Plaintiff does not dispute that Williams may be served and answer on behalf of SOC. *Id.* ¶ 22.

may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation omitted). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on "the complaint, any documents attached to the complaint, and any documents attached to the motion to

dismiss that are central to the claim and referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

## III. ANALYSIS

Because the Court finds that Plaintiff has not stated a claim under Rule 12(b)(6), the Court for purposes of this Report and Recommendation assumes without deciding that Plaintiff has standing and accepts as true Plaintiff's allegation that Save Our City has the legal capacity to be sued as a defendant. The Court first addresses the parties' central fact dispute, then discusses Plaintiff's legal claims.

### A. Is Save Our City An Association or Merely a Facebook Page?

The parties dispute whether Save Our City is an unincorporated association, as Plaintiff contends, or a Facebook page that has no legal personhood. Williams argues that "'Save Our City' is the name used for a Facebook page; it is not an entity." Dkt. No. 11 at 7. In his Amended Complaint, Plaintiff alleges that "SOC endorses candidates, identifies Council members and the Mayor as affiliated with it, runs full-page political ads in the newspaper identifying itself as the funding source, operates a Facebook page where it identifies itself as a 'community organization' with a founding date and street address, operates an Instagram account, runs a related website, makes announcements about city policies on behalf of the city . . . and—as admitted in Defendant's Motion to Dismiss—this 'non-existing entity' sometimes even jointly hosts events." Dkt. No. 10 ¶ 13 (citing Dkt. No. 11 at 7-8 ("[T]he Save Our City Facebook page is used to promote community, city, school, and church events. It is also sometimes used to jointly host events with established organizations like churches.")).[5]

---

[5] Plaintiff also alleges that before the suit was filed, the SOC Facebook page identified SOC as a "movement" or a "community organization" and stated that "all information herein is a political

The Court must credit Plaintiff's factual allegations over Williams's. At the motion to dismiss stage, "allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. 544 at 555) (cleaned up); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations").

The Court therefore accepts Plaintiff's well-pleaded facts as true and evaluates Plaintiff's legal claims on the assumption that SOC is more than a Facebook page; it is a group of individuals—some of whom sit on the Mart City Council or serve in the City government—who associate together to run political ads, operate social media accounts and a website, make announcements on behalf of City Council, and host events. Dkt. No. 10 ¶¶ 13, 24-26. The Court next turns to the merits of Plaintiff's claims.

### B. Whether Plaintiff Has Stated Claims That Raise A Plausible Right to Relief

#### 1. First Amendment Claim

First, Plaintiff asserts a claim against SOC for First Amendment retaliation under 42 U.S.C § 1983. "The First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)) (internal quotation marks omitted). For an ordinary citizen to state a claim for First Amendment retaliation, a plaintiff must show that "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused

---

advertisement paid for by the campaign to elect Save Our City (SOC) candidates." Dkt. No. 10 ¶ 4. The page listed a mailing address in Mart, Texas. *Id.* Plaintiff alleges that seven days after he filed his Original Complaint on April 10, 2019, "the Facebook page was altered to disclaim being an official page of the City of Mart or any other public entity." Dkt. No. 12 ¶ 4 n.3. The Facebook page "continues to identify City Council members as its endorsed candidates, but now indicates the page merely 'may' include political advertising." *Id.*

them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (citations omitted). To state such a claim under Section 1983, "a plaintiff must also show that the alleged constitutional deprivation was committed by a person acting under color of law." *Burnside v. Kaelin*, 773 F.3d 624, 626 (5th Cir. 2014) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). "A person acts under color of state law if he misuses power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)); *see also Brown v. Miller*, 631 F.2d 408, 411 (5th Cir. 1980) (explaining that an act of a state officer "not taken with authority or under cloak of authority, will not be considered under color of state law simply because the individual, although pursuing private aims, happens to be a state officer").

A private entity can qualify as a state actor in a few limited circumstances—including, for example, "(i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) (citations omitted). Plaintiff attempts to rely on the first and third of these circumstances.[6]

First, Plaintiff argues that SOC acts under color of law because it "acts jointly" with the city government, citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982). Dkt. 12 at 9. But *Lugar*

---

[6] Plaintiff does not dispute that SOC is a private entity. He alleges that SOC is an "organization/association," Dkt. No. 10 ¶ 69, and that SOC has the legal capacity to be sued either as a political committee, specific use committee, nonprofit association, or unincorporated association. Dkt. No. 12 at 6-7 (citing Amended Complaint, Dkt. No. 10 ¶¶ 5-6, 11).

held that a private company acted under color of state law where the company "invoke[ed] the aid of state officials to take advantage of state-created attachment procedures." *Id.* at 942. In other words, the private actor in *Lugar* participated jointly with state officials in the seizure of disputed property through use of a "state-created" and state-administered prejudgment attachment procedure. *Id.* Here, Plaintiff does not allege that SOC acted in cooperation with state officials or used state procedures; Plaintiff alleges that state officials used a private association's Facebook page to publicize their work, and that one or more state officials vandalized Plaintiff's property and harassed his customers. These alleged wrongful acts do not arise from "power possessed by virtue of state law" and are not "made possible only because the wrongdoer is clothed with the authority of state law." *Bustos*, 599 F.3d at 464 (quotations omitted); *cf. Brown*, 631 F.2d at 411 (holding that mayor acted under color of state law when he stole plaintiff's paychecks because he "had access to the town paycheck solely because he held the office of mayor"). Plaintiff has not cited any authority establishing his claim that state officials' use of a private association to publicize their work and otherwise advance their interests constitutes "joint action."

Alternatively, Plaintiff argues that SOC acts under color of law because SOC "performs traditional public functions for the City" by "[a]nnouncing, explaining, and defending its own policy decisions" through the Facebook page. Dkt. 12 at 8. Plaintiff cites *Manhattan Cmty.*, 139 S. Ct. at 1926, and *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 468 (2009). Neither of these opinions supports Plaintiff's position. The *Manhattan Cmty.* Court explained that "to qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have *traditionally and exclusively* performed the function." 139 S. Ct. at 1929 (emphasis added) (collecting cases). "'Very few' functions fall into that category." *Id.* (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978)). The Supreme Court concluded in

9

*Manhattan Cmty.* that operating public access channels on a cable system is not a traditional, exclusive public function. *Id.* at 1930. Here, Plaintiff cites no authority for the position that announcing, explaining, and defending policy decisions is a traditional and exclusive function of the government. The only other authority Plaintiff cited for this point—*Pleasant Grove*—held that a city's acceptance of privately donated monuments in a public park was a form of government speech that is not subject to the Free Speech Clause. 555 U.S. at 468. That case does not relate to Plaintiff's claim here.

The Court concludes that Plaintiff has not plausibly alleged that SOC is acting under color of law. The Court therefore recommends that the District court dismiss Plaintiff's First Amendment claim.

### 2. Texas Election Code Claim

Plaintiff's second claim is for a violation of TEX. ELEC. CODE § 253.131. *Id.* ¶¶ 62-70. A district court may exercise supplemental jurisdiction over state law claims that do not independently come within the court's jurisdiction so long as they "form part of the same case or controversy" as the claims which do fall within the court's original jurisdiction. *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 293 (5th Cir. 2010); 28 U.S.C. § 1367(a). The Fifth Circuit, however, has "long applied the 'general rule' that 'a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial.'" *IntegraNet Physician Res., Inc. v. Texas Indep. Providers, L.L.C.*, --- F.3d ----, No. 18-20659, 2019 WL 6721121, at *7 (5th Cir. Dec. 11, 2019) (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc*., 554 F.3d 595, 602 (5th Cir. 2009)).

Because the Court recommends that Plaintiff's sole federal claim be dismissed, the Court recommends that the District Court follow the general rule and decline to exercise jurisdiction over Plaintiff's remaining state law claim.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss (Dkt. No. 11) and **DISMISS** Plaintiff's First Amendment claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court **FURTHER RECOMMENDS** that the District Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim under the Texas Election Code.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on December 19, 2019.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE